### Ross *v.* HELLYER and another.[1]

#### *(Circuit Court, S. D. Iowa, C. D.* October, 1885.)

HOMESTEAD—ABANDONMENT—REMOVING INTO AND VOTING IN ANOTHER COUNTY.
   Removal of the owner of a homestead to another county, and repeatedly voting at elections held in such county, is sufficient evidence to establish an abandonment of the homestead.

In Equity.

This is a suit in equity to subject the homestead of the defendants, at Des Moines, Iowa, to the payment of a judgment recovered by the assignor of the complainant in this court, May 22, 1879, for $4,438.93. The homestead in question was purchased and paid for partly with the proceeds of a former homestead owned by the defendant Hellyer, at Nevada, Story county, Iowa, when the debt on which the judgment was recovered was contracted. It is claimed by the complainant—*First*, that, notwithstanding Hellyer continued to be the owner of the Nevada homestead at that time, it was for the time being abandoned as such, as against this complainant, who, during the abandonment, became his surety in an indemnifying bond.

*P. F. Bartle* and *S. F. Balliet,* for complainant.

*Gatch, Connor & Weaver,* for defendants.

LOVE, J. The evidence in this case is convincing to my mind that Robert Hellyer, the defendant, changed his residence from Nevada to Boone without any definite intention of returning to the former place. That he made an actual change of abode from the one place to the other there is no doubt. With what intent or purpose did he make the change? Was it his purpose in going to Boone to make that place his domicile? If it was not, then why did he commit the offense of voting at elections in Boone? The reasoning of counsel for the defendant on this fact is, to my mind, entirely unsatisfactory. Counsel say:

"*First.* As to the conceded fact of Hellyer having voted while living at Boone, it signified one of three things: either that he was a citizen by actual change of domicile, and therefore had the right to vote, or that he errone-

-------

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

ously supposed he had the right to vote without such change, or that he knew his voting to be illegal and criminal. Either the second or third having been the fact would be consistent with the defendants' present claim. Hellyer's own testimony is that, while he did not remember having voted, he did so, if at all, because he supposed actual residence alone gave him the right to vote."

Again, it is said that he may have erroneously supposed he had a right to vote without a change of residence. The court cannot accept this argument as sound. It is manifestly untenable. Ignorance of the law in any man of ordinary intelligence cannot be presumed or assumed. Any man in Iowa must be densely ignorant not to know that he cannot reside in one county and vote in another without committing a public offense. To say nothing of the legal presumption that every man knows the law, it is a matter of common knowledge with our people that the right of suffrage must be exercised in the county in which the citizen has his residence. If Hellyer went to Boone with no intent to make it his residence, but for some mere temporary purpose, regarding Story county at the same time as his place of residence, it seems to me most unreasonable that he could have been ignorant of the fact that in voting in Boone county he was committing a grave public offense. But counsel say:

"Why may we not, if necessary, assume that Hellyer knowingly violated the law in voting at Boone, rather than that both himself and wife falsely testified that their residence there was only temporary?"

As to Hellyer, if we assume that he knowingly committed a crime against the law in voting at Boone, we discredit him as a witness. If he knowingly committed one crime, what warrant have we to say that he would scruple to commit another crime, when his interest would be promoted by the second offense? It would argue almost total oblivion, in the court, of the lessons of common experience, to attach any great importance to the testimony of witnesses given in their own pecuniary interest, in the very teeth of facts and circumstances wholly inconsistent with their testimony. I greatly prefer the evidence of facts to the testimony of parties to the record as to their own intentions, when such testimony is given to put money in their own pockets. Now, if we conclude that it was Hellyer's intention to become a citizen of Boone by actual change of domicile, and therefore that he had a right to vote in Boone county, we ascribe to him conduct consistent with his duty as a citizen. But if we reach the opposite conclusion, namely, that he did not intend to fix his residence in Boone, but to continue it in Story county, and that he therefore had no right to vote in Boone county, we then impute to him a crime of very serious character. Should the court impute to Hellyer a purpose implying guilt rather than innocence? Why should the presumption of a guilty intention prevail against that of an innocent and lawful purpose? Is it a just method of reasoning upon human conduct, to impute to a party unlawful and criminal in-

tentions, when a lawful and innocent purpose is more consistent with his conduct? The law presumes innocence. If Hellyer were on trial for illegal voting, would it not be deemed a harsh and erroneous judgment to reverse the legal presumption, and, in the words of counsel, "assume that Hellyer knowingly violated the law in voting at Boone?" In this case there was an actual change of residence for about three years from one county to another. In connection with this fact, we have the further fact conceded that the party voted repeatedly in the county to which the change was made. If this cannot be taken as sufficient evidence of an actual change of domicile, and of a purpose to make the last-named county the residence of the party, it is difficult to see what evidence would be sufficient to warrant that conclusion.